IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**KEONTE K. YORKSHIRE,**

            **Petitioner,**

v.                                                  **Criminal No. 2:18-cr-177-9**

**UNITED STATES OF AMERICA,**

            **Respondent.**

***MEMORANDUM OPINION & ORDER***

Before the Court is Keonte K. Yorkshire's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 481. The Government opposed the motion and Petitioner did not reply. ECF No. 484. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

On December 6, 2018, Petitioner was named in an eight count Indictment on December 6, 2018 charging him with Conspiracy to Interfere with Commerce by Means of Robbery, in violation of 18 U.S.C. 1951(a) (Count One); Interference and Attempted Interference with Commerce by Means of Robbery, in violation of 18 U.S.C. 1951(a) and 2 (Counts Two, Four and Six); Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. 924(c)(l)(A)(ii) and (iii), and 2 (Counts Three, Five and Seven). ECF No. 1. On February 5, 2019, Petitioner pled guilty to Counts One, Four, Five, Six and Seven of the Indictment. ECF Nos. 81, 82. According to his Presentencing Report ("PSR"), from about September to October 2018, Petitioner and about nine other co-defendants conspired to rob grocery stores at gun point. ECF No.473 at ⁋ 15. As part of the conspiracy, the defendant and his co-defendants used at least a six-member team on each robbery, which comprised of conspirators who served as inside and outside

lookouts, getaway drivers, and two masked gunmen. Petitioner and his co-defendants stole a total of $5,611.09 from three grocery stores. *Id.* at ¶¶ 24-25. In addition to stealing money, Petitioner's conduct resulted in one man getting shot which required him to undergo surgery as well as counseling for emotional distress and panic attacks. *Id.* at ¶¶ 19, 27-28. Others suffered psychological problems and some were unable to return to work. *Id.* at ¶ 28. Petitioner was assessed a criminal history category of III, offense level of 28, and faced a recommended guideline range 97 to 121 months, plus 204 months, consecutive for all counts. *Id.* at ¶¶ 100-101. On September 23, 2019, Petitioner was sentenced to 150 months followed by five (5) years of supervised release. ECF Nos. 292, 300. Petitioner is currently incarcerated at FCI Cumberland, a medium-security prison in Maryland, with a projected release date of May 29, 2029.

On October 20, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 468. On November 23, 2020, Petitioner filed a motion through counsel. ECF No. 481. The Government opposed the motion and Petitioner did not reply. ECF No. 484.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic and argues he is at high risk for serious illness. ECF No. 481. At age 23, Petitioner argues that his daughter and daughter's mother, who is also his fiancée, suffer from asthma and HIV which present extraordinary and compelling reasons for compassionate release because they are at an increased risk of death or hospitalization if they contract COVID-19. *Id.* at 9. Accordingly, Petitioner requests that the Court grant his petition for compassionate release and start his period of supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully

exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further

3

defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Requirement

The Court finds that Petitioner exhausted his administrative remedies prior to bringing his motion with the Court. On July 20, 2020, Petitioner submitted a request for compassionate release to the Warden at FCI Cumberland. ECF No. 484 at Exhibit 4. On July 27, 2020, the Warden denied Petitioner's request for compassionate release. *Id.* at Exhibit 5. Accordingly, more than 30 days have passed since Petitioner's request.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19 because of his underlying conditions. Notably, other than having asthma as a child, Petitioner reported in his 2019 PSR as being in good physical and mental health. *See* ECF NO. 473 at ¶¶ 84-85. Moreover, medical records provided by the Bureau of Prisons (BOP) for the past

5

two years reflect that Petitioner was last seen by medical staff in October 2020 for a sore on his genitalia. Therefore, Petitioner does not argue that his own medical conditions are grounds for compassionate release. Rather, Petitioner argues that his fiancée is at high risk for serious illness due to COVID-19 because she has HIV, which would impact her ability to take care of their minor child who also has asthma. ECF No. 481 at 8-9. Thus, Petitioner argues that his family circumstances present extraordinary and compelling reasons that warrant his release. *See Id.; see also*, U.S.S.G. § 1B1.13, cmt. n.1. Specifically, in a letter to the Court on January 5, 2021, Petitioner indicated that his fiancée recently passed away due to complications from HIV and that his daughter, who also has HIV, is now in the care of his own parents. ECF Nos. 503, 504. Petitioner also indicated that rather than let his daughter go to foster care, that he would requests that the Court release him so that he may take care of her. *Id.* Although the Court is sympathetic to Petitioner losing his fiancée, Petitioner has not provided any evidence that allow the Court to evaluate whether his family circumstances merit extraordinary and compelling reasons for compassionate release. Notably, Petitioner did not provide any evidence that his three-year-old daughter is currently being transferred to foster care or that his parents cannot care for her. Rather, Petitioner stated that her grandparents are currently caring for her but are challenged by working fulltime. Moreover, the U.S. Probation Office contacted Petitioner's BOP case manager to follow on up on this issue and confirmed for the Court that Petitioner's fiancée passed away on January 4, 2021. ECF No. 505. The Probation Office also reported to the Court that the child is being cared for by both the maternal and paternal grandparents, who do not have any plans to transfer the child to foster care, and they are working together to develop a custody and childcare plan. *Id.* Therefore, Petitioner has not shown extraordinary or compelling reasons for compassionate release.

      Second, however, Petitioner does show a potential risk of contracting the disease at his

prison facility. As of January 26, 2021, the BOP has reported a total of 387 positive cases of COVID-19 for inmates at FCI Cumberland.[1] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[2] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner and other co-defendants conducted robberies of several grocery stores at gunpoint. ECF No.473 at ¶ 15. According to the Statement of Facts, as part of the conspiracy, Petitioner and his nine co-defendants all planned a robbery in which some served as inside lookouts to identify the grocery store manager and relay that information to those masked members of the conspiracy who entered the grocery stores with firearms. ECF No. 82. The lookouts outside the grocery stores monitored for the presence of law enforcement and any other possible threats. *Id*. Petitioner and his codefendants also used earpieces to communicate and coordinate the robberies

---

[1] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov,* https://www.bop.gov/coronavirus/
[2] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

as they were occurring. *Id.* They also used encrypted communication to coordinate the planning and execution of the robberies. In total, Petitioner and his co-defendants conducted three robberies, and during one of the robberies, a victim was shot by one of Petitioner's co-defendants and sustained a non- life-threatening injury. *Id.; see also,* ECF No.473 at ¶¶ 19, 27-28. Petitioner was assessed a criminal history category of III and an offense level of 28. *Id.* at ¶¶ 100-101. Moreover, although Petitioner committed the instant offense at 23 and has a minor criminal record, the offenses he has been arrested for show a propensity for violent offenses, weapons, and drugs. *Id.* at ¶¶ 69-78. According to the U.S. Probation Office, since his incarceration, Petitioner has received no infractions. *See* ECF No. 483. Furthermore, while Petitioner is waiting to be enrolled in drug education classes, he is working in the Unicor Department, participating in financial responsibility classes, and working on saving funds monthly and completing his resume. *Id.* He also has a goal of obtaining his birth certificate and enrolling in health and fitness classes. He completed the GED program in October 2019. *Id.*

Overall, the § 3553(a) factors do not weigh in his favor. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's motion for Compassionate Release is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
February 2, 2021

_____
UNITED STATES DISTRICT JUDGE